HENRY D. STANNARD et al., Respondents, *v.* SAMUEL F. PRINCE, Appellant.

Plaintiffs were forwarding merchants at T., and were employed by defendant to ship certain marble to him at P. The marble was shipped on board a canal boat which proceeded on the way as far as A. Learning that it was there delayed, one of the plaintiffs went to A. and there learned that the only tow-boat company it was practicable to employ to tow the boat down the H. river declined to take the boat unless the captain would pay an old bill, and would pay in advance the charge for towing. The captain had gone home to procure the money. Plaintiffs thereupon advanced the money and the boat was put into a tow, and by the negligence or unskillfulness of the employes of the tow-boat company was injured and sunk. In an action to recover for advances and charges, wherein the loss was set up as a counter claim, *held*, that plaintiffs acted simply as forwarders, not as carriers; that by the transactions at A., they did not assume the carriage of the property; that they had a right, and it was their duty to pay the advance charges, and although defendant was not liable for the advance on the account of the captain, it was for his benefit, and he could not complain; and that as the loss did not occur by any negligence on the part of plaintiffs, and was not a natural or ordinary consequence of any act of theirs, they were not liable therefor.

(Submitted February 16, 1876; decided February 25, 1876.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department affirming a judgment in favor of plaintiffs, entered upon the report of a referee.

This action was brought by plaintiffs as forwarders to recover charges and advances on a quantity of marble received and shipped by them for defendant.

Plaintiffs were engaged in business as forwarders at Troy, N. Y. In the fall of 1865 they received by railroad a quantity of marble consigned to them, belonging to and to be forwarded to defendant at Philadelphia, and they paid the charges, procured a canal boat to transport the same, on which the marble was shipped, and advanced to the captain seventy-five dollars on the freight. The boat proceeded to Albany to be there taken in tow. One of the plaintiffs

learning that it was there delayed, went to Albany to ascertain the cause. He found that the proprietors of the only tow-boat company who would tow the boat had refused so to do unless the captain would pay an old bill of seventy-five dollars and would advance the charge ($100) for towing the boat. The captain not being able to pay, had gone home to procure the money, and as he had not returned, the tow was about to proceed without his boat. Plaintiffs thereupon advanced the sum claimed. The boat was then put in the tow and other boats lashed to her stem, but so improperly fastened that in swinging around, her stem was torn off and she sank. This was the last tow of the season.

In a letter written by plaintiffs giving an account of the loss, it was stated that one of them had determined to go to New York, overtake the boat, and see her through, paying her bills if necessary. Defendant had written prior to the shipment, urging haste. One letter contained the following : " I do not mean to limit you in the freight so as to prevent shipping in good season. * * * Am anxious to get my marble through before ice makes, and will expect you to do the very best you can for me in. the way of freights, dispatch, etc."

Further facts appear in the opinion.

*Esek Cowen* for the appellant. Plaintiffs assumed the duties and liabilities of common carriers, and are liable to defendant for the loss of his goods. (*Teal* v. *Sears*, 9 Barb., 317; *Garvey* v. *Jarvis*, 46 N. Y., 310; *Wilson* v. *Tumman*, 6 M. & G., 236.)

*Irving Browne* for the respondents. Plaintiffs were not common carriers in a legal sense. (*Roberts* v. *Turner*, 12 J. R., 232.)

CHURCH, Ch. J. The plaintiffs, in receiving the marble at Troy, engaging the boat Smith for its transportation to Philadelphia, and advancing a portion of the freight, acted as

forwarders simply, and not as carriers. They had no interest in the freights, nor in boats or vessels, nor did they assume to act as carriers in the particular transaction. Judge STORY defines " forwarding merchants " as " a class of persons well known in America, and usually combine in their business the double character of warehousemen and agents, for a compensation, to ship and forward goods to their destination," * * * " and, of course, they are responsible for ordinary care and skill and diligence " (Story on Bailment, § 444); and SPENCER, J., said, in *Roberts* v. *Turner* (12 J. R., 232), '' that a person thus circumstanced should be deemed an insurer of goods forwarded by him, an insurer, too, without reward, would, in my judgment, be not only without a precedent, but against all legal principles." When the business of forwarding and transporting goods are combined, it becomes a question, often a difficult one, to determine in which capacity the person held the goods at the time of the injury or loss. In the case of *Teall* v. *Sears* (9 Barb., 317) the court held the defendants liable, partly on the ground that they held themselves out as carriers, and partly upon the ground that, from the facts disclosed, they assumed the carriage of the property themselves. In the case at bar there is no such complication of facts. It is evident from the letters of the defendant to the plaintiffs that he employed them as forwarders only. In one letter he says: " I do not mean to limit you in the freight so as to prevent shipping in good season," * * * " and will expect you to do the very best you can *for me in the way of freight, dispatch, etc.,*" thus showing that the plaintiffs were acting as agents merely to forward the property for the defendant. It is found by the referee that when the boat Smith left the dock at Troy the plaintiffs had discharged their whole duty to the defendant. This finding is undoubtedly correct. But it is claimed, on behalf of the defendant, that the transactions at Albany changed the liability of the plaintiffs, and that then they assumed the carriage of the goods and responsibility of carriers. The findings of fact are rather meagre to properly present the question, but per-

haps it may be considered without violating the rule of not looking into the evidence to find a reason for reversing a judgment. The plaintiffs learned that the boat was delayed at Albany, and went there to ascertain the cause, and found that the proprietors of the only tow-boat company which it was then practicable to employ to tow the boat down the river declined to take the boat unless the captain would pay an old bill for towing, of seventy-five dollars, and $100, in advance, for towing the boat at that time, and that the captain had agreed to pay these sums, and had gone home to procure the money. The plaintiffs advanced the money, $175, and the boat was put into the tow by the employes of the tow-boat company, and in turning around, in consequence of the improper manner in which the boat was attached, it was injured and sunk. I do not think it can be affirmed that the plaintiffs intended to take possession of the boat on their own account, and assume the carriage of the property themselves. There was not an abandonment of the boat by the captain. He had engaged the tow, and was absent to procure the money required by the towing firm. As to the $100 for towing the boat, the plaintiffs had a right, and I think it was their duty to pay it. They had undertaken the duty of forwarding the goods, and the advance payment was necessary for that purpose, and they had made arrangements with the defendant to draw on them for similar advances. The seventy-five dollars was paid on account of the captain. It was clearly for the benefit of the defendant, and although he is not liable for it, he has no reason to complain. The plaintiffs, in what they did at Albany, simply removed the obstruction to the passage of the boat, and enabled it to fulfill the contract already made. The plaintiffs did not take possession or control of the boat. It was late in the season; the ice was forming in the river; this was the last tow going down; the defendant had repeatedly urged the plaintiffs to hasten the progress of the marble, as they feared it would freeze in. The plaintiffs were therefore active and vigilant, more so, perhaps, than their duty required, but their acts were all in

their capacity of forwarders; and in volunteering to make extraordinary exertions they acted at the request of the defendant, and, as it appears, in good faith for their interest. Their statement in a subsequent letter that they intended to go to New York and see the boat through to Philadelphia, and if necessary, pay the bills, would have been acts of the same character, acts induced by the urgent solicitation of the defendant. If their negligence had caused the accident, they might have been liable, but not because they were carriers or insurers. It is found that they saw the boat attached, and knew how it was done, but they did not attach it, nor does it appear that they knew even the effect which would be likely to be produced by the manner of adjusting the hawser. We are unable to perceive any reason for holding the plaintiffs liable as carriers, or otherwise, for the loss that occurred. Their fault, if any, was an excess of caution in behalf of the defendant, for which, under the circumstances, they ought not to suffer in pecuniary damages. But for their intervention at Albany it is quite probable that the boat would not have been taken in the tow, and the loss would not have occurred; but the loss was not the natural or ordinary consequence of their act, and was not, in any legal sense, caused by it.

The judgment must be affirmed.

All concur.

Judgment affirmed.