## MOORE vs. EVANS.

A carrier may, by express contract, restrict his common law liability, by un-
dertaking to carry goods at the *risk of the owner.*
*Gould* v. *Hill,* (2 *Hill,* 623,) overruled.
Where a person engaged in the transportation business between Albany and
Milwaukie, by way of the Erie canal and lakes, and interested in a line of
boats on the Erie canal, undertook to convey goods from Albany to Mil-
waukie, although he had no interest in any vessel on the lakes, *Held* that
he was a common carrier for the whole distance ; and that it was immate-
rial whether he used his own boats and vessels, or employed the vessels of
other persons, to carry for him, on some part, or even all of the route.

THIS action was brought against the defendant as a common
carrier, to recover the value of certain goods delivered to him
to be transported from Buffalo to Milwaukie. and which were
alledged to have been lost.

On the trial the plaintiff showed that the defendant kept an
office at Albany, and was engaged in the business of transport-
ing goods upon the Erie canal, and occasionally west of Buffalo,
on the lakes.   On the 23d September, 1848, the plaintiff, through
his agent, applied to the defendant at his office in Albany, to
know upon what terms he would transport the goods in question.
He agreed to carry them from Buffalo to Milwaukie for $5 ; and
the negotiation between the parties closed by giving the follow-
ing receipt or memorandum, introduced in evidence on the trial
by the plaintiff: " Received, Albany, Sept. 23, 1848, from C. L.
Moore, for J. L. Weaver, five dollars freight on 1435 lbs. from
Buffalo to Milwaukie by vessels on the lakes, *owner's risk.*
5 barrels, 5 sacks, 6 boxes—1435 lbs.        L. E. EVANS."

This receipt being given, and the money paid, the goods were
accordingly delivered by the plaintiff on board the defendant's
line of canal boats at Albany.   The goods did not reach their
place of destination ; the vessel on which they were shipped at
Buffalo having been run into, upon lake Huron, on a dark and
stormy night, by a steam propeller, and sunk.   Other facts in
the case sufficiently appear in the opinion of the court.

Moore v. Evans.

*A. J. Colvin*, for the plaintiff.

*J. K. Porter*, for the defendant.

*By the Court*, WRIGHT, J. I am of the opinion that the proof was sufficient to show the defendant to be a common carrier of goods from Buffalo to Milwaukie. He was interested in a line of canal boats, and had been engaged for several years in the transportation of goods on the lakes, as well as on the canal. A common carrier is one who undertakes for hire or reward to transport the goods of those who choose to employ him, from place to place. (*Story on Bail.* § 495.) It is not controverted that the defendant held himself out to the public as a carrier from Albany to Buffalo, and I think the evidence equally conclusive to show him engaged in transporting property for hire or reward, west of Buffalo. It is true he had no interest in any vessel on the lakes; but he was engaged in the business of transportation, and was interested in the freight, and whether he used his own boats and vessels, or employed the vessels of other persons to carry for him, on some part, or even all of the route, can be a matter of no consequence. (*Fairchild* v. *Slocum*, 19 *Wend.* 329. *Teall* v. *Sears*, 9 *Barb.* 317.)

But conceding the defendant, in the season of 1848, to have exercised, as a public employment, the business of carrying goods, a more important question arises, whether as a carrier he could restrict the obligations which the law otherwise imposed on him, by a special agreement. The plaintiff himself showed that the goods in controversy were undertaken to be transported under a special agreement, exonerating the carrier from the rigid and stringent liability imposed by the common law. The legal import of the contract in this case was to carry the goods at the *risk of the owner*. Unless, being a carrier, the defendant was prohibited from entering into such an agreement with the owner of the goods, he incurred only the responsibility of an ordinary bailee for hire, and became answerable only for misconduct or negligence, of which there was no pre-

tense; but if there were, the court excluded the defendant from showing the circumstances under which the loss occurred.

At common law a carrier is liable for all losses, except those occasioned by the act of God or the public enemies; unless there has been a fraud practiced on him by the owner of the goods, in which case he will be absolved from the consequences of any loss not occasioned by negligence or misconduct. He is regarded as an insurer of the property committed to his charge. In England, for a period of about thirty years, the doctrine prevailed that the carrier might restrict his liability by *notice*, and so far was the doctrine carried, that in one or two reported *nisi prius* cases he was allowed to accept with the whole risk on the owner; restricting his own liability to that of an ordinary bailee for hire. Eventually parliament interfered, bringing back the liability of carriers to the common law rule as it had prevailed prior to our revolution. In this state, carriers have not been permitted, by their own act, to restrict their liability. Notwithstanding any attempt by notice to specially accept property for transportation, they have been rigidly held responsible for losses, (where there was an absence of fraud on the part of the bailor,) except occurring by the act of God or the public enemies. (*Hollister* v. *Nowlen,* 19 *Wend.* 234. *Cole-*v. *Goodwin, Id.* 251.)

But may a carrier, by express contract, restrict his common law liability? In England it had been assumed as good law that he might. (*Alleyn,* 93. 4 *Co.* 84, *note to Southcote's case.* 4 *Burr.* 2801. 1 *Vent.* 190, 238. 2 *Taunt.* 231. 8 *Mees. & Welsb.* 443.) In *Hollister* v. *Nowlen,* (19 *Wend.* 234,) it was treated as an open question in the courts of this state; and Mr. Justice Bronson, in his able and elaborate opinion in that case, whilst repudiating the doctrine of restriction by general notice, did not deny that there might be a "special contract for a restricted liability," though such a contract could not be inferred from a general notice brought home to the employer. In *Gould* v. *Hill,* (2 *Hill,* 623,) it was held by a majority of the court, (Ch. J. Nelson dissenting,) that a common carrier could not limit his liability, by a special agreement. This case seems not to have been very fully considered. Mr. Justice Cowen, who

delivered the opinion of the court, referred to the reasons assigned by him in *Cole* v. *Goodwin*, which in the latter case were *obiter*, as the question there was not upon a special agreement, but a general notice. In *Cole* v. *Goodwin* he had insisted that common carriers and innkeepers, from their public employment, owed duties at common law from which public policy demanded that they should not be discharged, and that consequently they could not limit their common law liability, even by express agreement. Mr. Justice Bronson seems silently to have assented to the decision in *Gould* v. *Hill*, whilst subsequently, in the court of appeals, he assumes it to be still a debatable question in this state whether common carriers and innkeepers can contract for a more restricted liability than the law imposes upon them in the absence of a special agreement. ( *Wells* v. *Steam Navigation Co.*, 2 *Comst.* 209.) In Pennsylvania, it has been held by the courts that the common law responsibility may be limited or abridged by the special terms of the acceptance of the goods; and that this may even be effected by a general notice, clear and explicit, and brought home to the employer. (16 *Penn. R.* 67.) The supreme court of the United States, in *New Jersey Steam Navigation Co.* v. *Merchants' Bank*, (6 *How.* 382,) whilst denying the right of the carrier to restrict his obligation by a general notice, hold that it is competent for him to do so by a special agreement. In the case of a general notice which is the act of the carrier himself, they agree with this court in *Hollister* v. *Nowlen*, that if any implication is to be indulged from the delivery of the goods under such a notice, it is as strong that the owner intended to insist upon his rights, and the duties of the carrier, as it is that he assented to their qualification; but that he may be permitted to discharge himself from duties which the law has annexed to his employment, by an express stipulation by parol or in writing, specific and certain, to which the bailor has assented, and leaving no room for controversy between the parties.

The law declares the liability of the common carrier; and it has been said that it is not the form of the contract but public policy which determines its extent. When a duty or liability is

Moore *v.* Evans.

imposed by law upon an individual acting in a particular capacity, he cannot of course, if he act in the capacity, make a valid contract to be discharged from such duty or liability. But though an individual may usually exercise the employment of a carrier, there are no considerations, unless those of public policy, forbidding him, in respect to a particular transaction, dropping his public employment, and specially contracting with the owner of the goods as a private person, who incurs no responsibility beyond that of an ordinary bailee for hire. And if the owner chooses to enter into a special contract, he virtually agrees that in respect to the single transaction, the carrier is not to be regarded in the exercise of his public employment. It is urged that the carrier should not be permitted to contract, in any particular case to incur a limited liability, as the tendency would be to encourage guilty negligence, fraud or crime. The severities of the common law are to hang over him, under all circumstances, for the public protection; whilst other insurers of goods, with analogous obligations, are allowed to contract. In any particular instance, the extraordinary duties annexed to the carrier's employment do not concern the public, but only the parties to the transaction. It is a question simply between the owner and the person who engages to transport, as to the safe custody and delivery of the goods. The tendency to encourage negligence, fraud or crime, is no greater than in many other business occupations of life; and I see not why, in this age of civilization, public policy demands that this particular class of custodians and insurers of property should be prohibited from making such terms with their employers, as shall mutually be agreed upon and assented to. Were extraordinary privileges conferred by law on the carrier; were it an office or employment that could be enjoyed but by few, with the tendency to a monopoly of the peculiar business, there might be some show of reason to guard against imposition, by holding in all cases the individual or company engaged in the transportation of property as an ordinary employment, to the stringent obligations of the common law. But this is not so. The business is open to all who may choose to engage in it; and like many other of the industrial occupa-

tions of life, it is full to repletion.   The employer is not to be imposed upon.   There can be no such thing as a combination amongst those engaged in the business of carrying, by exacting special agreements to throw off their common law obligations. The owner of goods may still insist that they shall be carried, with the common law responsibilities attached; and this will be always so, unless the risk be diminished by express stipulation of the parties.   The owner of goods may contract with a private person, and the latter will be only answerable for misconduct or negligence.   A person is engaged in the usual employment of carrying.   Acting in his public capacity the law imposes on him certain obligations which he cannot by his own act avoid.   The employer knowing this, and desiring that the property shall be intrusted to his custody, is willing to enter into a special agreement, whereby the carrier's common law liability is diminished. Why should he not be permitted to do so?   I confess that I cannot perceive any stronger reasons against it than in the case of any other insurer of property.   I am unable to appreciate those overwhelming considerations of public policy which demand, that because an individual is usually engaged in the employment of a carrier, he should have the common law liabilities fixed on him in all cases, even though the owner of the goods be willing to contract specially with him as a private person.   I concur with Mr. Justice Nelson, "that I am unable to perceive any well founded objection to the carrier restricting his obligation by a special agreement, or any stronger reasons forbidding it than exist in the case of any other insurer of goods, to which his obligation is analogous; and which depends altogether upon the contract between the parties."   (*N. J. Steam Nav. Co.* v. *Merchants' Bank*, 6 *How.* 382.)   Indeed, as Judge Nelson observes, prior to the case of *Gould* v. *Hill*, the right thus to restrict the obligation was admitted, in a large class of cases founded on bills of lading and charter parties.   In these cases, when the bill of lading or charter party formed the contract in the shipment of goods, and which instruments contained express stipulations diminishing the risk, and enlarging the exception to the common law responsibility other than that of inevitable ac-

cident, the right of the carrier thus to limit his liability was not doubted.

We are of the opinion that the case of *Gould* v. *Hill* ought not to be followed, as being unsound, both upon principle and authority. It has no precedent, that I have been able to discover, either in the adjudications of our own courts, or of Westminster Hall. Its tendency is to impose an extraordinary burden upon a class of our citizens engaged in a particular branch of trade, through considerations of public policy that are at least now, in a great degree, fanciful, whatever weight may have been once attached to them.(a)

In the present case the agreement was a special one, and in writing. The goods were to be transported at the risk of the owner. The agreement exempted the defendant from losses arising out of events and accidents against which he was a sort of insurer. As he had undertaken to carry, however, from Buffalo to Milwaukie, the like degree of responsibility attached to him as to a private person, engaged casually in the like occupation. He was answerable for his own negligence or misconduct, or that of his servants or agents. But the burden of proving that the loss was occasioned by a want of due care or by gross negligence, was on the plaintiff. In the absence of any special agreement restricting liability, it is enough that the owner prove the undertaking of the carrier, and that the goods did not reach their destination. The law presumes against the carrier, until he proves that the loss was occasioned by inevitable accident, or the public enemies, or that a fraud was practiced on him by his employer, and the loss was not the result of his own negligence. It is otherwise when the carrier's liability is restricted by special agreement. The *onus* is shifted on the employer. If negligence or misconduct be alledged, the burden of proof is on the latter. In this case there was an absence of proof to show negligence or misconduct on the part of the defendant. When the defendant proposed to prove the circumstances under which the loss occurred, with the view of showing that there had been no

(a) *Gould* v. *Hill* was overruled in *Parsons* v. *Monteath*, (13 *Barb.* 353.)

---

Graham v. Van Wyck.

---

want of ordinary care, the judge excluded the evidence, holding the defendant to the strict liability of a carrier at common law, and virtually deciding that although he showed affirmatively that the loss occurred without negligence on his part, as he could not restrict his common law liability, it was no defense.

We think the judge erred in holding upon the whole case that the defendant could not, by special agreement, restrict his liability as a carrier; and that notwithstanding the agreement for the transportation of the goods in controversy, the common law obligations rested on him.

There are other points in the case, but as a new trial must be granted on this ground. it is unnecessary now to examine them.

Judgment of circuit court reversed, and new trial ordered; costs to abide event.

[ALBANY GENERAL TERM, December 6, 1852. *Parker, Harris* and *Wright,* Justices.]