By the Court. Hoffman, J.
The inaccuracy with which, as we apprehend, the charge of the Judge at the trial is presented to us, renders a new trial necessary. The Judge is stated to have said, that notice might have been given, and yet Mr. Page or Mr. Rippy not have heard it; and subsequently was requested to charge “that if they believed that notice was given to the passengers who held tickets for the new road at Syracuse, as testified by the defendants’ witnesses, then the plaintiff passed on the old road through his own default, and the defendants were under no obligation to carry him on without his fare, or to return him to Syracuse.”
*529 The court refused so to charge, unless the plaintiff was shown to have heard the notice.
That the learned Judge meant to qualify this proposition by the idea that it would be sufficient if the plaintiff was in a position to hear such notice, we do not doubt. But as the charge is presented upon the case, the jury would have been misled, and the influence of the error in favor of the plaintiff is apparent.
We proceed, with a view to the new trial, to state our opinion upon the leading points argued by counsel, or arising in the cause.
It may be admitted, that the question is settled, in our state, that a restriction of a common carrier’s liability for goods is not to be effected by a general public notice, although it may be by special contract. (Parsons v. Monteath, 13 Barbour, 353 ; Moore v. Evans, 14 Barb. 524. See, also, The N. Y. S. Co. v. The Merchants' Bank, 6 Howard’s U. S. R. 382; Davis v. The New Jersey Ins. Co., 4 Sandf. Rep. 136.)
But the case of passengers is very different from that of goods. The counsel of the defendants very justly argues, that the passenger owes a correlative duty to the company, which he is bound to observe. They are to take care of him, but he is also, in many respects, to take care of himself; and a wilful or a heedless neglect of reasonable regulations actually, or by a strong inference, made known to him, exempts them from any liability for the consequences.
If the plaintiff had travelled the road before, in the train leaving at the same hour, it would be a fact bearing upon the question of knowledge. The weight of that fact would depend upon the frequency and recency of the period of such travelling.
If the defendant gave such published notice of the running of its trains, and such special notice in the cars, of the necessity of changing cars at any particular station, that every traveller of ordinary intelligence, by the use of reasonable care and caution, would obtain all the requisite information as to the route to be travelled, and the cars to be taken at any intermediate point of the voyage, it discharges its whole duty in this respect.
If a passenger, merely by a failure of his own to use such care and caution, instead of changing cars at a particular station, and taking cars which go to the place to which he has paid his fare, continues in the cars in which he started, and is carried in another *530 direction, the result is to be attributed to his own negligence, and not to a breach of duty, or of contract, on the part of the company.
The fact of the publicity of such regulations, the time, manner, and circumstances of publishing them, and whether sufficient to bring home actual notice to the passenger, provided he bestows reasonable care and attention, in order to inform himself, is one to be determined by a jury.
Merely pointing the plaintiff, at Albany, to this train of cars, as the one to be taken, is not an .engagement that such train would carry him to Lyons, without a change of cars, in the progress of the route.
Being directed to that train at Albany, as one in which he was to take a seat, would not give him a right, on reaching Syracuse, and being expressly told that he must there leave that train and wait the arrival of, and take a seat in the next train, in order to go to Lyons, to insist on being conveyed to Lyons in the train in which he started from Albany.
Hence, the question necessarily resolves itself into one of fact, and that is, did the company use such means, to give information before reaching Syracuse, of the cars to be taken at that place, in order to be carried to Lyons, that the exercise of reasonable care, attention, and caution, on the part of the passengers, would have brought that information to their notice?
If it did, it was the fault and negligence of the passenger, and not of the company, that the passenger to Lyons continued ignorant of the necessity of leaving the cars at Syracuse, and waiting there until the arrival of the next train. For the consequences of such negligence the company is not responsible.
If passengers for Lyons were not allowed to go as far as Syracuse in the train first leaving Albany, but, on the contrary, were required to start from Albany in the train which left last, those of them who might find it convenient to stop an hour at some intermediate point, would be very apt to complain of such a regulation, as being unnecessarily oppressive and unreasonable. A regulation which promotes the convenience of some passengers, and interferes in no way with that of others, should be regarded favorably, and, if every reasonable precaution is used to bring to all . passengers the knowledge of it, the company should not.be held *531 responsible for the consequences resulting from the inattention of passengers, and their neglect of the means used to convey to them such information.
So, if the plaintiff was told, before reaching Mareellus that he must stop there, and return to Syracuse in a train he would meet at Mareellus, and that he might return in it without charge, it was his duty to have returned, if by doing so, he would' have reached Syracuse in ample time to take the train for Lyons. If he refused to do that he should not be held to have any right to continue further on the train in which he was riding.
If the plaintiff left Syracuse on the wrong train through his own neglect to attend to proper information given, that it was necessary for passengers for Lyons to wait at Syracuse for the next train, or was in fault in not leaving the cars at Mareellus, and, notwithstanding that, insisted on going further, the agents of the company had a right to put him out of the cars if he refused to leave them on being requested so to do.
The companjr, in such event, would not be liable for ejecting him from the cars, unless more force was exerted than was necessary for the purpose. If more was used, then it would be liable for any injuries produced, or damage caused, by such excess of force. (Angell on Carriers, § 527 a, and § 531, note 1.)
The plaintiff had not proved enough to make his own statements or complaint that he had a lame back admissible. No physical injury, caused by ejecting him from the car, had been proved which justified the inference that a lame back was the consequence of it. It is difficult to say why his complaints of pain or soreness in any other part of his system would not be equally competent.
There should be some proof of actual injury other than complaints of the party himself,-made several days subsequently, to justify the admission of such complaints. If those who witnessed the transaction give no evidence justifying the inference of actual injury, nor of any complaints of injury made at the time of the transaction, the mere fact that several days subsequently he complained of lameness in his back, without proof where he had been, or what he had been doing in the mean time, is no evidence that such lameness was caused by ejecting him from the cars. It does not amount to as much as an explicit declaration of his own, that *532 he was injured by being ejected from the cars. Such a declaration would be clearly inadmissible.
This case is very different from that of Caldwell v. Murphy (1 Kern. 419).
In that case, it was proved by a physician that the plaintiff was injured internally. The witness under examination had taken care of the plaintiff from the time he was injured for about ten or eleven days; had assisted him in getting from his bed, and in getting down stairs, and had seen him repeatedly since. He was asked as to the condition of the plaintiff’s health since the accident, and answered, “he has invariably complained.”
There was sufficient foundation laid for such evidence. But the evidence given in this case reverses the rule, and if of any effect, tends to prove an inj ury from the mere fact of complaints at a subsequent period, without any evidence of injury or complaint at the time of the transaction in question.
A new trial must be granted, with costs to abide the event.