JOHN M. FRENCH *et al.*, Respondents, *v.* THE BUFFALO, NEW YORK & ERIE RAILROAD COMPANY, Appellants.

NEGLIGENCE. COMMON CARRIERS. CONTRACT. LIMITATION OF CARRIER'S LIA-
BILITY UNDER SPECIAL CONTRACT. CONSTRUCTION AND EFFECT OF TERM
"OWNER'S RISK" IN A CONTRACT FOR THE TRANSPORTATION OF GOODS. FIND-
INGS OF FACT WITHOUT EVIDENCE TO SUPPORT THEM. BURDEN OF PROOF.

Where an agreement is relied upon to exempt a common carrier from lia-
bility on account of the gross negligence of his agents or servants, the
terms of the contract ought to be so clear and explicit as to leave no
doubt of its meaning and intent.

Where the agreement between the common carrier and the owner of the
goods provides, in general terms, that the same are transported at the
"owner's risk," the carrier is liable only for damages resulting from his
own personal negligence, or from the gross negligence of his agents or
servants.

(The distinction between "slight negligence," "ordinary negligence" and
"gross negligence," noted in the opinion of WOODRUFF, J., which see.)

In other words, the term "owner's risk," in a contract for the transportation
of goods, imports, that the owner assumes the risks arising from the
ordinary dangers of transportation by the means employed, which the rea-
sonable and ordinary care of the common carrier might be insufficient to
prevent, and the latter is liable only for those dangers which, with ordi-
nary care and prudence, might be avoided.

The evidence in the case does not support the finding of even ordinary
negligence, much less of gross negligence, on part of defendants' servants,
and the plaintiffs should have been nonsuited.

(For details of evidence, upon which negligence was imputed to the defend-
ants in the court below, but which were held insufficient by this court,
see opinion of WOODRUFF, J.)

Where the liability of a common carrier is limited by special agreement,
the burden of proving that the loss was occasioned by the want of due
care, or by gross negligence, rests upon the plaintiff, and he cannot rely
upon the absence of proof of diligence to support his allegation of neg-
ligence.

THE action herein was brought to recover damages for an
alleged breach of the defendants' contract, to carry certain
goods of the plaintiffs from Rochester to the city of Buffalo,
and to forward thence, etc. It was referred. The referee
reported in favor of the plaintiffs, assessing their damages at
$464.24. The judgment entered thereupon was affirmed in

the Supreme Court in General Term in the seventh district, and the defendant appealed to this court.

On the 27th of March, 1860, the plaintiffs delivered to the defendants at Rochester, properly packed for transportation, four parcels of iron goods or wares, consisting of stoves, pots, kettles, etc., and received from the station agent, as evidence of the undertaking of the defendants, four several receipts therefor, acknowledging the receipt of the goods, and stating as to one parcel, that they are to be forwarded to D. R. & Co., State of Illinois, and as to the others, naming other destinations. Across the face of each receipt were written the words "owner's risk."

The goods, placed in one of the defendants' freight cars, were carried in safety to Avon; but shortly after leaving Avon, the train, consisting of eleven cars, became by some means divided, whether by the breaking of a coupling or the breaking or displacement of the coupling pin, did not appear and could not be determined from any knowledge possessed by the persons in charge of the train. The locomotive and tender with three or four cars ran a very short distance ahead of the others, when the engineer, not being aware that the cars were separated, first apprised by the strain upon the alarm-rope and the ringing of the bell that there was something amiss and that the train should be stopped, sounded the whistle instructing brakemen to apply the brakes, at the same time checking the speed of the engine. The cars were moving at from twelve to fifteen miles an hour; and on the retardation of the speed of the forward portion of the train, the rear portion came into contact therewith with such violence that four cars were thrown off the track, among them the car containing the plaintiffs' goods; it was thrown down a high embankment and the goods were broken. The referee, after finding these and other particulars which it is unnecessary to recite, found that "the defendant, in the absence of the brakeman from the brakes, on a heavy down grade of thirty feet to the mile, with a train of so great weight proceeding at the rate of from twelve to fifteen miles per hour, did not exercise diligence and faithfulness in the performance

of its contract to carry the plaintiffs' goods, and the damage to the goods was occasioned by the want of ordinary care and skill on the part of the servants of the defendant."

As conclusions of law he held, that the receipts are the contract of the parties.

That the words "owner's risk" formed part of the contract and operated to limit the defendant's obligation or liability.

But that this limitation did not extend to the negligence of the servants of the defendants which occasioned the injury to the goods. That negligence was not within the risk assumed by the plaintiffs. And the plaintiffs are therefore entitled to judgment.

*A. P. Laning*, for the appellants.

*Geo. F. Danforth*, for the respondents.

Woodruff, J. It is not insisted, upon the argument of the appeal, that any error was committed by the referee in the admission or rejection of evidence, and the only exceptions urged upon our attention are, first, those which depend upon the construction and legal effect of the terms "owner's risk" which were written upon the receipts given by the defendant for the goods delivered for carriage, which words, the referee finds, formed part of the contract between the parties; and, second, the question whether there was any evidence that the injury to the plaintiffs' goods was the result of such negligence of the defendant as is not included in the exemption imported by the words thus written upon the receipts.

And, on the part of the respondent, it is not questioned that the terms "owner's risk" entered into and formed part of the contract between the parties, limiting the responsibility of the defendants according to the just import of those terms.

It is not argued, and it is far too late to argue, that a party having goods to be carried is not at liberty, if he choose, to enter into a special contract with the carrier, modifying and restricting the liability of the latter and assuming any of the

risks of the transportation which, but for such contract, the law imposes upon a common carrier. The idea that public policy forbids such contracts and does not permit the owner of goods to act freely in that regard, and himself to bear any such risks, if he can thereby promote his own interest in the reduction of the price of carriage, though at one time prominently put forth, never had any sufficient foundation in reason, principle or authority, and has been very distinctly repudiated. (See *New Jersey Steam-Navigation Company* v. *Merchants' Bank*, 6 How. U. S. 382, 393, 417; *Scheffelin* v. *Harvey*, 6 Johns. 180; and cases collected in *Mercantile Mutual Insurance Company* v. *Chase*, 1 E. D. Smith, 139; *Parsons* v. *Monteath*, 13 Barb. 353; Angell on Carriers, ch. 7; *Wells et al.* v. *The Steam Navigation Company*, 8 N. Y. 375.)

It is claimed, however, that the contract imported by the words "owner's risk" does not exempt the defendant from any other than those perils of transportation which may result in injury to the property notwithstanding ordinary care and diligence is exercised by the defendant and its servants.

Or, more briefly, that it does not exempt the defendant from liability for an injury to the plaintiffs, resulting from the want of ordinary care and skill on the part of the defendant's servants.

It is said that the law will not suffer a man to claim immunity by contract against his own fraud or negligence. In *Wells* v. *Steam Navigation Company*, Mr. Justice GARDINER says, that, though this be so, a man may nevertheless contract against liability for the negligence, even gross negligence, or the fraud or felony, of his agent, or those in his employment; and no sufficient reason can, I think, be urged to the contrary; provided, always, the contract clearly shows such to be its just meaning.

A party may certainly consent to place the instruments and agencies which he is employing in his business at the service (*pro hac vice*) of another, undertaking to set them in motion under the scheme or plan of management which he has established, and say, "you shall have the benefit of my

enterprise, my machinery, my servants, my rules, regulations and scheme of administration, but I propose that you shall take the hazards of every thing but my own fraud or gross negligence, and regard me as in no respect insuring or guaranteeing the fidelity or the prudence, diligence or care of those servants, whom I have no reason to distrust, but who may, out of my personal presence, neglect their duty or prove otherwise unfaithful." There is no sound reason for denying, that, if a contract is made on those terms, and, presumptively, for a much less compensation to be paid, it shall not bind the parties. It may be safely assumed, that, in this country at least, men of business are shrewd enough to take care of their own interests, and that if a party consents to such a bargain, it is because it is for his interest to do so ; he expects to make or save money by relieving the other party from risks which he is willing to assume, and in general his expectation is realized. There is neither honesty nor policy in permitting him, when a loss happens through one of the risks he consented to bear, to deny the binding force of his contract.

This is now the rational view of the subject which is recognized as law.

The cases, however, very properly, I think, hold that the contract ought to be so explicit as to leave no reasonable doubt of its meaning and intent.

Where particular risks are specified, the contract may operate according to its terms, but when terms of doubtful or double meaning are employed, the general rule binding common carriers to a stringent liability will determine the construction, because when the carrier insists that an exception has been created which modifies or suspends the general rule, he must show that the exception has been created. So where the terms of the exception are general, but can be reasonably satisfied by a limited construction, the courts have shown a disposition to confine their operation within what they have deemed reasonable limits.

Hence it is said the terms " at the risk of the owners " or " owner's risk " (as in the present case), ought not to be

deemed to except every risk which can possibly be suggested. That it is not reasonable to suppose that a shipper or owner would understand or intend thereby, that the carrier should be under no responsibility, however inadequate or unsuitable his means of safe transportation, and however careless, reckless or dishonest his servants may be.

Hence it is said, that, when an agreement is relied upon, it ought to be clear and explicit, or it will receive that construction which may be most rationally deemed according to the intent of the parties, or, in short, the exemption claimed should appear in a form clear and unequivocal.

In accordance with this view of the subject it is held that such general terms as are above referred to, do not exempt the carrier from the consequences of his own fraud or neglect of the duty which he *undertook* to perform, and do not exempt him from liability for the fraud, bad faith or gross negligence of the servants whom he employs for its performance.

Such is the doctrine of *Schefflin* v. *Harvey* (6 Johns. 169), of *Alexander* v. *Greene*, in our late Court of Errors (7 Hill, 533), of *The New Jersey Steam Nav. Co.* v. *The Merchants' Bank* (6 How. U. S. 344), and of *Wells* v. *The Steam Nav. Co.*, in this court (8 N. Y. 375).

In the last case the doctrine is expressed to be that a contract in such general terms does not exempt the party from liability for the " gross negligence " of his servants, and that is deemed to be the rule settled in *Alexander* v. *Greene*.

Sir William Jones distinguishes between ordinary negligence and gross negligence and slight negligence thus: " Ordinary neglect is the omission of that *care* which *every man* of *common prudence* and capable of governing a family, takes of his own concerns." " Gross neglect is the want of that care which every man of common sense, how inattentive soever, takes of his own property," and "slight neglect is the omission of that diligence which all circumspect and thoughtful persons use in securing their own goods and chattels." And Mr. Justice Story gives in substance the same definition of these terms. " Ordinary negligence may be defined to be the want of ordinary diligence, gross negli-

gence to be the want of slight diligence, and slight negligence to be the want of great diligence. (Story on Merchants, § 17.)

This is the recognized and accepted distinction between the different degrees of negligence (see *Scott* v. *DePeyster*, 1 Edm. Ch. 542, 543), a distinction which is often found of but little practical importance when dealt with by the jury on the trial of a cause, but one which the courts are bound to regard in the determination and application of the rules of law.

The finding of the referee in the present case and his conclusions thereupon, show most clearly that he has held the defendants liable not simply and only for " gross negligence," but for the want of ordinary care or " ordinary negligence."

In *Scheffelin* v. *Harvey*, the point decided was, that the carrier was liable for embezzlement by the crew or other person while the goods were in the possession of the carrier's servants, though no fault or negligence was imputable to the owner of the vessel personally. In *Alexander* v. *Greene*, the Supreme Court had held, that the defendants were not liable for negligence of their servants, although it be found to be gross negligence, and affirmed a nonsuit granted at the Circuit. The Court of Errors decided that there was evidence upon which the jury might have found that the defendants' servants were guilty of gross negligence; that the defendants were responsible for such negligence; and that the question, whether the defendants were guilty of gross negligence, should have been submitted to the jury.

In the case in the United States court, the court were of opinion, that there was gross negligence, and the defendants were held liable therefor—one of the judges, indeed, deemed the negligence to amount to a marine tort. And the only point decided in this court, in *Wells* v. *The Steam Navigation Company*, was, that, under such general exemption as " at the risk of the owner," the defendants were liable for the gross negligence of their servants.

The language of the opinion does not invariably discriminate between gross negligence and the want of ordinary care,

but the point decided did not extend the liability of the defendants further than for gross negligence.

But, according to my view of the proofs in this case, it is not necessary to pursue that inquiry.

If the defendants are only liable for the gross negligence of their servants, then, upon the proofs in this case, the plaintiffs should have been nonsuited. When the plaintiffs rested their case, there was no proof except that the goods were "shipped" in good order, and were broken. Upon the defendants' proofs there was nothing shown on which gross negligence of the defendants' servants could be predicated.

But more than this, there was no evidence of want of ordinary care.

Without inquiring whether, when the plaintiff had shown that the contract of the defendant was not performed, that was enough to put the defendant to proof in explanation, it is clear, I think, that, when the defendants did show in explanation that the goods were broken in consequence of the cars running off or being thrown from the track, in course of the transportation, he brought the case within the purview of the exemption contained in the contract. Under the contract, the general rule is in terms, transportation at the owner's risk; the qualification which the cases referred to establish, is, injuries resulting from fraud, bad faith or gross negligence excepted. When, therefore, the cause of the injury appeared, the defendants were, *prima facie*, excused, unless it be true that the mere fact, that the freight car was thrown from the track, is evidence of gross negligence; or, in the aspect in which I propose to consider the state of the proofs, is evidence of want of ordinary care. (See cases below cited.) It would be a most fortunate fact in regard to the security to life and limb, as well as safety to property, if it were presumptively true that ordinary care is sufficient to guard against such accidents. Most unfortunately they do happen from various causes, against which the utmost caution, vigilance, skill and discretion is required, and which, when used, often prove ineffectual. Surely, the mere fact of the accident did not prove gross negligence.

But the defendants laid their whole case before the referee and if the plaintiffs proved no negligence, still if upon the whole proof, the finding of the referee was warranted, it is now of no importance by whom the evidence was furnished.

It is not necessary to repeat what has so often been said in this court, that where there is conflicting evidence this court has no jurisdiction of the question whether the referee has found against the weight of the evidence, his judgment having been affirmed in the Supreme Court. I repeat the observation that we may not be misunderstood when it is added; that if there be such absence of evidence to the matter alleged, that the party should have been non-suited, or that it would be erroneous to submit the question to the jury, if the issue was before a jury, then, if due exception be taken, a question of law is raised and erroneously decided; an exception, founded on the claim that such was the state of the proofs, this court are bound to consider and decide.

To the finding that the damage to the goods was occasioned by the want of ordinary care and skill; as also to the conclusion that upon the facts found the defendants are liable, the defendants' counsel excepted.

An examination of the question thus raised makes it necessary to see what it is that was imputed to the servants of the defendants as negligence.

It is found that the goods were well and properly put in a good and suitable box car for transportation. That they were carried by the defendants' usual route. That at Avon the train was made up and inspected (though without manipulation) by the conductor, and he found all about it right as far as he could discover, and the proper person reported that the wheels had been examined and found safe.

The train soon after leaving Avon entered upon a descending grade which continues for about a mile and a quarter. While passing this portion of the road, the alarm-rope which ran through the train, by some strain thereon, rang the alarm bell and so notified the engineer that something was amiss.

And it is expressly found that in the *exercise of due dis-*

*cretion* he understood it to be a signal to stop the train, and he did so as soon as possible and whistled " down the brakes."

In fact by some accident which is not accounted for, the train was divided, but the rear cars followed so closely upon those attached to the engine that the alarm rope was not broken, and the engineer is expressly bound to have acted with due discretion in what he did, although if he had known that the train was divided, he should have continued the speed of the engine and forward cars, and·so have kept out of the way of the rear cars. Retardation of the engine brought the two parts of the train together, within half a minute, with a concussion which threw some of the cars off the track down an embankment, and so the plaintiff's goods were damaged.

" Due care had been used to keep, and the track was kept in proper condition up to the time of the happening of this accident." And it was proved by uncontradicted evidence that the coupling was the one ordinarily used upon railroads and the one " most approved."

The usual manual force was on the train, and consisted of a conductor, an engineer, fireman, two brakemen, and a man who performed the double duty of brakeman and oilman.

Now, to this point, not only no gross negligence, and no want of every proper diligence is found ; but the contrary.

The facts found, from which the inference of negligence is drawn, are these :

At the moment the separation of the cars occurred, the conductor was in the rear car, which was a passenger car. The duties of the man who acted as oilman and brakeman required him to be in the passenger car " as much as to be any where else," and he was there, and he and the conductor both sprang to the brake and worked it *as soon as they could.* Another brakeman was on the top of one of the box cars, which continued to be connected with the engine, examining and seeing to the condition of the alarm rope, which, it was shown without dispute, it was his duty to do ; and " it does not appear where the third brakeman was, or that any brake-

man was at a brake;" and it is found, as a fact, that "no brakeman was at a brake."

The referee does not find that the absence of the brakemen caused the two parts of the train to come together; or, that they could have prevented it or its consequences, the engine being stopped, in the exercise of due discretion, while the cars were not so far divided as to break the alarm rope. But he indulges a conjecture, that "instant and proper letting down of the brakes on the rear car *might* have so diminished the force of the concussion as to have avoided the catastrophe, if the train was in proper running order."

And the referee has carefully excluded any presumption that he may have found other facts on which to base a conclusion of negligence, which are not specifically stated in his findings, by adding, that it does not otherwise appear how the accident occurred, nor what was its immediate cause.

Now, in all this, I discover nothing warranting an inference of *any* negligence.

1. The alleged absence of the brakeman from the brakes, if that was negligence, is not ground for charging the defendant, unless such absence caused the injury. It is not found that it did, or that their presence would have prevented it. Nor did any witness so testify, or give even an opinion to that effect.

2. The conjecture which is stated in the findings, that that the instant and proper letting down of the brakes on the rear car *might* have diminished the force of the concussion, is relieved wholly from any implication of negligence by the other facts found. The brakeman was on that car, and where his duties required him to be as much as at the brake ("as much as any where else"), and not only he but the conductor, with prompt endeavor to assist, "sprang to the brake and worked it as soon as they could." Here is not only no negligence, but a finding of instant diligence, and a doing therein all *they could do*.

3. The finding, that the second brakeman was on the top of a box car, engaged in seeing that the alarm rope was in order, is certainly not a finding of negligence; and the

uncontradicted proof was, that the handle of the brake of the box cars rises to the top of those cars, so that, though not proved to have been standing over a brake at either end, he was in truth within convenient reach of one or the other. But this is wholly immaterial, for the obvious reason, that if he had been at the brake, no working thereof, however instant or efficient, could tend, in the slightest degree, to prevent the concussion or its consequences, but the contrary. It would have been far better if the car on which he stood, and the others connected with it and with the engine, had advanced more rapidly, instead of being retarded.

There remains the circumstances stated by the referee, that the cause of the separation does not appear, whether by the breaking of a coupling or the flying out of a coupling-pin, or from some other cause. Then, surely, it could not be inferred that it was caused by negligence. An attempt was made to show that a linch-pin might have prevented; but the proof clearly showed that ordinary care did not require it, and besides, that the linch-pin is more likely to fall out by the agitation of the cars than the coupling-pin.

And the referee further finds that it does not appear where the third brakeman was.

As to this and as to the circumstance last noted, they do not prove want of ordinary care. In the case in the Supreme Court of the United States, already twice referred to Mr. Justice Nelson, says: " The respondents " (defendants) "having succeeded in restricting their liability as carriers by the special agreement, the burthen of proving that the loss was occasioned by the want of due care or by gross negligence, lies on the libellants, which would be otherwise in the absence of any such restriction." This bears with great force upon the whole conclusion of the referee ; and as to the third brakeman, if his presence at any brake where it was his duty to be, was material, his absence should have been proved. It is not enough to say he was not proved to be there. This doctrine is also stated by the late lamented chief judge of this court in a very able opinion affirming the binding effect of the very words now in question " owner's

risk," and holding that where such a contract is made, it is the plaintiff who must prove the want of due care or gross negligence if he would recover; no presumption arises against the carrier. The plaintiff cannot rely on the absence of proof, he has the affirmative of the allegation. (See *Moore* v. *Evans*, 14 Barb. 524, 530.)

This is not a case of conflicting evidence, nearly every fact I have referred to is found by the referee; there is no conflict as to any other.

I cannot find warrant for any finding of gross negligence, or even want of ordinary care; the testimony given by the defendants, on the contrary, proves ordinary care at least, and that without contradiction.

The conclusion of negligence has been found rather upon what is not proved than upon what is proved. Every servant, of whose acts there is evidence, and whose acts could have any influence to prevent injury, is shown and substantially found to have been prompt, active, diligent and discreet; and, as to any servant, there is no evidence that he was not so.

I think the judgment should be reversed. It is quite obvious, that, if the case is to be tested by the inquiry whether the plaintiffs established gross negligence, there could be no reasonable pretense of claim.

MILLER, J. The determination of this case depends upon the construction to be placed on the contract made for the transportation of the property. The receipts given provided that it was to be forwarded at the "owner's risk," and the question is whether these words include only the risks of breakage arising from the ordinary dangers of railroad transportation when due care has been observed by the carrier, and the carrier is liable for damages incurred beyond these risks.

The carrier may by special contract restrict his common law liability, and where this is done his relations are changed and he becomes as to that transaction an ordinary bailee and private carrier for hire, which imposes upon him the respon-

sibility of exercising ordinary care in the transportation of property. (*Moore* v. *Evans,* 14 Barb. 524, 530; *Dorr* v. *New Jersey Steam Nav. Co.,* 1 Kern. 485, 493.)

In *Wells* v. *The Steam Navigation Co.* (4 Seld. 375), in a contract by the owners of a steamboat used for towing boats upon the Hudson river, from New York to Albany, for hire "at the risk of the master and owners," it was held that the owners of the steamboat were liable for injuries arising from the gross negligence of their servants navigating it, although not occasioned by fraud or want of good faith, and that the phrase employed has reference to the perils of navigation not arising from the gross negligence of the contractor. This construction is not in conflict with some other cases to which we have been referred. (*Scheffelin* v. *Harvey,* 6 Johns. 169; *Alexander* v. *Green,* 3 Hill. 9 and 7, id. 547.) Where the goods are transported at the risk of the owner the burden of proving that the loss was occasioned by gross negligence or a want of due care is upon the owner. (14 Barb. 530.)

The question then arises whether there is any evidence to warrant the conclusion that the defendant was guilty of such negligence, such want of due care as authorized a recovery.

The referee has not found that the defendant was guilty of a want of care as to the cars; the making up and coupling of the train; the condition of the track; in using and obeying proper signals promptly at the first appearance of danger; or in the proper rate of speed, or the care and skill of the engineer; but he assumes that the damages were occasioned by the want of ordinary care and skill on the part of the servants of the defendant. He does not inform us in what that want of care and skill consisted, and it is difficult to see upon what evidence his finding was based. The train parted without any affirmative proof as to the cause, although according to the opinion of one of the witnesses, it was occasioned by the coupling pin flying out or breaking. The strain on the rope attached to the engine bell, caused the bell to ring, which was mistaken for a signal to stop the train, which signal was given and the engine stopped. If the engineer could have known that the train had parted he

would not have given the signal and thus the collision would have been averted. But he was not to blame for this mistake and could not have known it, and, therefore, he was not guilty of negligence.

The finding of the referee that there was no brakeman at the brake, I think, is not supported by the evidence. There is no proof whatever to support it, and as the plaintiffs were bound to make out affirmatively the negligence of the defendant, it was erroneous. The referee also finds that because the accident occurred there was a want of precaution and care. This, I think, was also erroneous, as it by no means follows without proof, and as a necessary result, that an accident of this kind is occasioned by a want of due care and caution. It might have occurred with all the care that properly could have been exercised, and been the consequence of circumstances beyond the control of those who had charge of the train. Accidents of this character are sometimes unavoidable, and such are the perils of railroad transportation, that no human foresight or prudence can guard against them. These were the risks against which the contract provided, and which the owners of the property assumed to take upon themselves. It is apparent, I think, that the plaintiffs utterly failed to establish that degree of negligence which was essential to maintain the action, and that the referee erred in his conclusion, and therefore the judgment must be reversed, and a new trial granted, with costs to abide the event.

BACON, DWIGHT and CLERKE, JJ., concurring,

Judgment reversed.