By the Court.—Monell, J.
The motion to dismiss the complaint, the request to charge the jury, and the exception to the charge, raise the question as to where the burthen rests to establish the defendant’s liability.
The liability of a warehouseman is not for negligence, but for not returning the property which is the subject of the bailment. If he neglects to return it, he is liable, unless he can account for its loss by showing that it has been taken or is gone from his possession without any fault on his part.
He is required to give to property confided to his keeping, the care which a person of ordinary prudence would give to his own property. Nothing more. If, *35 "bestowing such care, the property is lost, destroyed, or injured, without the fault of the keeper, he is relieved from responsibility (Story on Bail. § 444, etc.).
The only evidence to charge the defendant, furnished by the plaintiff, was the non-delivery of the goods when demanded ; and the refusal 'to dismiss the complaint; and the charge to the jury, was to the effect that evidence of non-delivery was, prima, facie, sufficient to cast upon the defendant the burthen of acquitting himself of negligence.
The learned judge who tried this case followed, it is understood, the case in this court of Schwerin v. McKee (5- Robt. 404), where it was held that proof by the plaintiff of the negligence of the defendant was not necessary ; and that the mere non-production of the subject of the bailment was sufficient to cast the burthen of proving diligence upon the bailee.
The learned judge might also have followed, had it been brought to his notice, the quite recent case in the Court of Appeals of Burnell v. The N. Y. and Cent. R. R. Co. (45 N. Y. R. 184), where the court held that the failure to deliver, prima, facie, establishes negligence. That action was to recover for the loss of baggage; and although the property had been transported by the defendants, as common carriers, yet, owing to the circumstance that the owner left the property for several days after its arrival at its destination, before it was demanded, the liability of the company was held to be not that of carriers, but a liability analagous to that of warehousemen. The court say (p. 189): “The failure of the company to produce the subject of bailment, when demanded, prima facie, established negligence and want of due care. When there is a total default to deliver the goods bailed, on demand, the onus of accounting for the default lies with the bailee.”
At the time of the trial in the case now before us, the volume containing a report of the decision, with the *36 opinion of the court, in Lamb v. Cam. and Am. R. R.. Co. (46 N. Y. R. 271), had not been published, and it was not, therefore, brought to the attention of the-judge. That case is supposed to overrule the preceding case of Burnell, so far as relates to the burthen of proof.
In the Lamb case the 'action was against the defend- . ants as carriers, for the loss of merchandise transported under a special contract that the company should not be responsible “for damage or loss by fire.”
The court held, that the goods having been destroyed by " fire,” the liability of the company was not that of carriers, but, as in the Burnell case, a liability like that of warehousemen.
Let us see how the two cases were presented. In the Lamb case, the plaintiff, having shown a non-delivery of the goods, rested. The defendants, “after proving that the loss had occurred by fire, proposed to rest their case,” but the court required that they should also show that the destruction by fire was not caused by negligence on their part. This was held to be erroneous.
In the Burnell case, the plaintiff having shown the non-production of the trunk, gave no further proof; and it was found as a fact that the loss occurred through the want of ordinary care by the defendants.
A casual reading of these cases left me in some doubt if they could be reconciled; but having occasion to examine them in the case of Mangin v. Dinsmore (35 Supr. Ct. R. 182), I came to the conclusion that they were to be distinguished.
The special contract in the Lamb case relieved the company from liability absolutely, unless there was negligence. So that upon showing that the loss was within the exemption, the company was absolved, unless it was shown that the loss was attributable to their negligence. In that case, it is obvious that the negligence must be shown by the party charging it, and *37 cannot be inferred or implied from the' mere non-production of the bailment. In other words, it could not be implied that it was negligently lost in or by the fire.
There was no special contract in the Burnell case, and nothing to exempt the company from liability absolutely. The law held them absolutely liable, and if they failed to produce and deliver the subject of the bailment when demanded, they could only escape liability by showing a loss of the subject, and a loss of it through no fault of their own. That cast the burthen of excusing the loss upon the bailee.
In the case at bar there was the common-law liability of a warehouseman. He was liable for the goods absolutely, unless they had been lost or destroyed through no fault of his own. The plaintiff had shown enough, ■grima facie, when he proved the non-delivery of the goods. Their loss must be accounted for by the bailee. That they were stolen, or destroyed by fire, or otherwise taken from the bailee, would not of itself relieve him from liability to the bailor. He must, show in addition that the loss, however it may have occurred, was not caused by any want of proper care and diligence on his part. And this absolute liability, except the loss is excused, distinguishes this from the Lamb case, and reconciles it with the Burnell case. Mere proof that the goods had been stolen was not enough. A larceny did not of itself relieve the warehouseman. If it was attended by no negligence on his part, it' would; and that he must show. Having shown the : bestowment of suitable care, then the larceny of the goods would be available as a defence.
The mere statement of the nature of the bailee’s • liability points very clearly to where the burthen of proof rests. He is bound to use ordinary and reasonable care, and is relieved from liability if that be shown.
It is true, the court, in the Lamb case, affirms a gen *38 eral principle which,, if taken disconnected from the facts, must be considered as overruling the case of Burnell. Thus the court say (p. 278): “The question is, whether in case of loss by a bailee for hire the bailor can recover, upon simple proof of loss, unless the bailee shall prove that he was free from all negligence contributing to such loss, or whether the bailor must go further and prove that the loss was caused by the negligence of the bailee.” And then it is said, “ the bailor cannot recover without affirmatively proving that the loss was caused by the negligence of the bailee.”
It cannot be that this, as a general principle, was intended to apply to the ordinary case of bailment, but to the peculiar liability of the bailees under the special contract with the bailors in that case. It is erroneous to say a bailee for hire is liable for negligence. He is liable for not delivering the subject of the bailment, and is excused if it has been lost without fault or want of care on his part. The contract of the bailee is that he will deliver to the bailor the property on demand. The refusal or neglect to deliver is the gravamen of the action, and the excuse for not delivering is the defence. But, as we have seen, the loss standing by itself is not a defence. It must be a loss unaccompanied by any fault of the bailee; and he proves, prima facie, the absence of such fault by showing the exercise of ordinary care. The railroad company were not to be liable if the property was destroyed by fire. Having shown the loss, they were discharged, unless a new liability arose out of their negligence. In that case the negligence became the gravamen of the action. But without the special contract, the loss by fire would not alone have excused the non-delivery. The company would have had to show that they had given careful attention to the property, and thereby that its loss was not caused by their neglect.
The case of Lamb must therefore be regarded as only *39 applicable to the facts in that case, and as not settling a principle in conflict with the decision in the Burnell case.
Some of the cases cited in the opinion in the Lamb case mark the distinction I have endeavored to draw. In Railroad Co. v. Reeves (10 Wal. 176), the loss was through the act of God, which exempted the carrier from liability (as did the fire in the Lamb case), unless there was negligence; and the court say (p. 190): “if after he has excused himself... it is charged that his negligence contributed to the loss, the proof of this must come from those who assert or rely on it.” So in French v. Buffalo, N. Y. & E. R. R. Co. (4 Keyes, 108), there was a special contract (“ owneds risk”) limiting the responsibility. But the court held the company was liable for negligence only; they say (p. 115), “when the defendants did show in explanation that the goods were broken in consequence of the cars running off the track ... he brought the case within the purview of the exemption contained in the contract,” and then could be made liable for want of due care. Schmidt v. Blood (9 Wend. 268), and the cases cited in note to Platt r>. Hibbard (7 Cow. 500), cannot perhaps be reconciled with the other cases, yet in the charge of Walworth, Oh. J., in Platt v. Hibbard, the court put the burthen of proof on the bailee, “to show that the loss did not happen in consequence of his neglect to use all that care and diligence on his part that a prudent and. careful man would exercise in relation to his own property.” The court in banc, however, did not pass on the question. Newton v. Pope (1 Cow. 109) was case for misusing a hired horse, and Schmidt v. Blood (supra) may be said to rest-on Finucane v. Small (1 Esp. N. P. R. 315), where the liability was for gross negligence only.
The examination which I have given of the several cases where the especial question now before us is considered, has satisfied me that the cases of Schwerin *40 V. McKie, and Burnell v. Gen. & H. R. R. R. Co. (supra) are not to Be considered as overruled or affected By the Lamb case; and that, therefore, the views entertained and expressed By the learned judge at the trial, .having Been in accordance with those cases, the exceptions of the defendant were not well taken.
The Burthen of proof rested, therefore, upon the defendant, and taking that Burthen upon himself, he endeavored to show, that the loss of the goods could not Be attriButaBle to any want of proper care on his part, But to causes which no provision, in the exercise of ordinary prudence, could have avoided.
I think, in the first place, that it was clearly established that the property had Been stolen. There is no reasonable ground for doubt, that the warehouse had Been Burglariously entered in the night-time, and one entire case, and part of the contents of the other case, had Been abstracted. The evidence to establish the Burglary is without contradiction, and convincing, and left the jury at liberty to adopt no other theory.
Having shown the manner of the loss, it Became incumbent on the defendant to go one step farther, and show that it was not caused By his neglect.
Evidence was thereupon given By the defendant, to the effect that the warehouse was constructed in the most substantial manner. It was of Brick, with thick walls, five stories high; iron doors and shutters, and with tin roof with scuttle secured By Bolts and chains and Bars. It had Been examined By the superintendent of the government warehouse department, and accepted and approved By the government as one of its bonded warehouses. The defendant employed a night-watchman, whose duty it was to guard and protect the Building and property. Everything was done to protect the goods that could reasonably Be done. At night the doors and windows were closed, barred, and Bolted, and the Building watched. I do not repeat the evidence. *41 It is long, circumstantial, and clear. I have examined it attentively, and I am satisfied it entirely exonerates the defendant from fault. It seems to me, that every ordinary precaution had been taken, as well in the construction, arrangement, and fitting up of the building, as in the oversight of the property in it, that can be required of a warehouseman. The evidence was without any substantial contradiction, and I cannot see how it could have been disregarded by the jury. To require further evidence, of proper care, than was given in this case, would be to impose a duty upon warehousemen, and bailees generally, which the law does not recognize as the measure of their responsibility. It would be to require them to do more than the most careful and prudent are supposed to do for the safety and protection of their own property, a length to which I believe the liability of bailees has not heretofore been carried.
The most that can be said against the defendant is, that after the burglary was discovered to have been committed, by breaking through the roof, it suggested that a stronger roof might have prevented the breaking ; or that the adjacent house, through or from which the burglars gained access to the roof, should have been watched. These however are not the tests; but the tests are, was the condition of things, before or at the time of the burglary, such as would satisfy a prudent man of their fitness and sufficiency to protect the property ?
The evidence, therefore, in my judgment, brought the defendant within the exemption of his liability, and, upon it, the verdict should have been in his favor.
We might set aside the verdict as being against the clear weight of the evidence; indeed as being without any evidence whatever to sustain it; but the motion, at the close of the trial, to dismiss the complaint upon the whole of the evidence, makes it, as well, a question of law*.
We think that motion should have been granted. It *42 embraced the ground already stated, that the evidence could not support a verdict for the plaintiff. In that case the complaint should have been dismissed.
The judgment and order should be reversed, and a new trial granted, with costs to the appellant, to abide the event.
Barbour, Ch. J., and. Yah Yorst, J., concurred.