WELLS AND TUCKER *against* THE STEAM NAVIGATION COMPANY

In a contract by the owners of a steam boat used for towing boats upon the Hudson river, to tow a boat from New York to Albany, for hire, "*at the risk of the master and owners*," the owners of the steam boat are liable for injuries arising from the gross negligence of their servants navigating it, although not occasioned by fraud or want of good faith.

The phrase "at the risk of the master and owners," in such a contract has reference to the perils of the navigation, not arising from the gross negligence of the contractor.

stipulation in a contract to exempt from gross negligence must be specific and distinct. It will not be implied from a clause containing a general expression which might otherwise be so construed.

The case of *Alexander* v. *Green*, 7 *Hill*, 544, approved.

This was an action of trespass on the case for negligence in towing the canal boat Jay, belonging to the plaintiffs, by means of which an accident occurred to her and caused her to sink in the Hudson river near the city of New York. The defendants were the owners of the steam boat Sandusky, which was used for towing boats upon the Hudson river. On the 20th of April, 1844, their agent in the city of New York gave to the plaintiffs' captain a *permit*, of which the following is a copy:

"New York, April 24th, 1844.
" Captain Young, of steam boat Sandusky, take in tow for Albany, canal boat Jay, ———, master, at the risk of the master and owners thereof, and collect $25. For owners.
E. DENNIS.

In pursuance thereof, the Sandusky took the Jay in tow at Whitehall slip in the city of New York, in the evening, and while proceeding on her passage to Albany an accident occurred, either by collision with a wharf or in passing a vessel, by which the Jay was sunk and her cargo injured.

The cause had been before this court upon questions arising upon a former trial when it was held that the defendants were not liable as common carriers. (See 2 *Comst.* 204.) The second trial took place at the Chenango circuit in April, 1850. Upon that trial it was admitted that the permit *was* the only undertaking of the defendants to tow the Jay; that the injury occurred while the Jay was in tow of the Sandusky, and the amount of damages in case the plaintiff was entitled to recover was agreed upon. Conflicting testimony was given upon the question whether the Jay was run upon a wharf, by means whereof she was stove and sunk, or was run into by a passing vessel. When the plaintiffs had rested, the defendants moved for a nonsuit upon the ground that under the contract the plaintiffs had assumed the entire risk of every hazard and casualty to which the boat might be subjected on the trip, unless fraud or bad faith was shown on the part of the defendants or those in their employment: that even gross negligence, without fraud or bad faith, would not subject the defendants to liability; and that neither fraud nor bad faith was charged in the pleadings, and the presumptions were against their existence and that none had been shown. The court denied the motion. Upon the testimony being closed, the court charged the jury that it was a question for the jury to decide, whether the defendants were guilty of gross negligence: that they were neither common carriers nor bailees for hire, but contractors bound to perform the service contracted for according to the terms of the contract: that under it, they were liable only for gross negligence or fraud or a want of good faith in performing the service: that in this case, the risk by the contract is to be borne by the master and owners, but the contract is susceptible of a construction that the defendants were liable for gross negligence: that gross negligence and fraud as a general rule were not convertible terms; that negligence may be so gross as to be evidence of fraud, but as a general rule gross negligence was not equivalent to fraud, but might be en-

Wells and Tucker *against* The Steam Navigation Company.

tirely consistent with good faith and honesty of intention The defendants excepted to the denial of the nonsuit, and also to each of the foregoing propositions of the charge. They then requested the court to charge that the permit covered all the perils of the voyage: that the defendants were not liable for gross negligence, and that the plaintiffs could not recover without showing fraud or a want of good faith in the persons in charge of the Sandusky. The court refused so to charge and the defendants excepted. The jury rendered a verdict for the plaintiffs for $13,384·11. A judgment entered thereupon was affirmed at a general term held in the sixth district in May, 1851. The defendants appealed therefrom.

*N. Hill Jr.*, for appellants. I. The defendants not being common carriers, there was no restriction upon their power to contract except such as the law imposes upon all persons, viz: that they shall not stipulate against liability for their own fraud or want of good faith. They had a right, therefore, to contract against liability for the gross negligence of their servants in charge of the Sandusky, especially such as was " entirely consistent with good faith and honesty of intention." (2 *Comst.* 204; *Story on Bailm.* §§ 22, 31, 32; 7 *Hill*, 537, 538; 3 *Hill*, 19, 20.) Such a contract would merely exempt the defendants from the risk of negligence in those having the Sandusky in charge, and leave the plaintiffs to their remedy against the parties really in fault. It would form no exception to the maxim " *Modus et conventio vincunt legem*."

II. The judge erred in refusing to instruct the jury, that the contract in question was sufficient to embrace the risk of gross negligence in those having charge of the Sandusky, unless there was fraud or bad faith. It was clearly intended to secure against the risk of *negligence* in conduct-. ing the Sandusky. The defendants not being common carriers, the only risk they can be supposed to have had in view was that *arising from negligence,* and the contract

Sel. IV.—48

must be construed accordingly; (4 *Burr's Rep.* 305, *Snyder* v. *Leibengood.*) To construe it as applicable merely to risks *not arising from negligence*, would render it utterly inoperative, which is contrary to all rules of interpretation (1 *Duer on Ins.* 216, *note* 4; *id.* 219, *note* 6; 6 *Mass. R.* 175, *Parsons* v. *Winslow;* 2 *Bl. Comm.* 379, 380; 1 *Evans' Poth.* 54.)

III. The language of the contract is *general*, and expresses the intent to stipulate against risk from mere negligence of *every kind*, without exception; and such intent being lawful, and gross negligence unaccompanied by fraud or bad faith, not having been excepted by the parties, the court can not except it without interpolating their language, and altering the contract. To depart from the language, and interpolate an exception or qualification *not expressed*, would be incurring the ·hazard of defeating the intent of the parties on mere *conjecture.* (2 *Sandf. Super. Ct. R.* 202, 220, *Lowber* v. *Le Roy.*)

IV. The defendants being liable only according to the strict terms of their contract, no principle of policy requires that its language should be subjected to unnatural restraint, so as to create an exception *not expressed.*

V. It being admitted that risk from negligence in towing the Sandusky *was present to the minds of the contracting parties*, forming an important part, if not the whole *subject matter of the contract*, how is it possible to say, with any thing like certainty, that one degree of mere negligence was *not contemplated*, but that *others were?* Had the contract been in express terms, "the Jay is to be towed *at the risk* of the master, &c., including risk *from negligence*," and containing no exception, it would be impossible to say that *all* negligence "consistent with good faith and honesty of intention," by whatever name called, was not meant. And yet the case would be the same in principle as now.

*J. A. Spencer*, for respondents.

MASON, J. — The only point in the case, is whether the justice at the circuit should have ruled that the defendants were not liable for gross negligence unless accompanied by fraud or a want of good faith in the performance of the service required by their contract. Under an ordinary contract to perform the service, they would be bound to bestow ordinary care and diligence, and would be liable to the owners of the property for any damage which should be occasioned by the want thereof. The *permit* in this case contains the contract, and the question is, whether it by its terms discharges the defendants from all liability not amounting to fraud or want of good faith. I can not think the expression contained in it " at the risk of the master and owner thereof," was understood by the parties as a protection against all kinds of negligence. It would be an extraordinary contract which should in express terms give such a latitude in performing a hired service of so important a character as the one under consideration; and to permit a contract to have so unreasonable an effect as it would imply, the intention of the parties should be clearly and unequivocally expressed, so as to leave no room for doubt or misconstruction. (*Schieffelin* v. *Harvey,* 6 *John.* 180; 7 *Hill,* 547.) In this contract, nothing is said about negligence. The parties undoubtedly had reference to those perils of navigation which were not the result of the contractor's own negligence when they provided that the boat should be towed at the risk of the master and owners. It was undoubtedly well known to those engaged in this kind of navigation that the law governing the liabilities of towing companies was not definitely settled. In some of the states they were held liable as common carriers while in one of our courts, a contrary doctrine was held; but the law was regarded as unsettled. And if the rule in relation to common carriers was to prevail, there would be a large class of risks peculiar to carriers, not arising from negligence, to which the defendants might but for a special contract have become liable, and it is quite

reasonable to suppose that the parties would make some special provision in relation to the risk each should assume.  And it is certainly much more reasonable to infer that when they declare, that the boat should be towed at the risk of the owners, they intended such risks as were incident to the navigation when proper care and skill were exercised, rather than risks to which it might be exposed by the negligence of the persons in charge of the steamboat.  It would require a man of a good deal of effrontery to ask another to insert in his contract for performing a service, a clause permitting him to be negligent in its performance, and relieving him from all liability for the injuries which his gross negligence might occasion; and the man who would insert such a clause in the contract would be a fit subject for a committee to take charge of his person and property.  As there were risks of the navigation to which the special clause in the permit may naturally be applied, and more consistently with honesty and fair dealing than if extended to the negligence of the defendants, it is undoubtedly the duty of the court so to apply it.  Such a construction is consonant with the probable intention of the parties.  I think the decision of the late court of errors in *Alexander* v. *Greene*, (7 *Hill*, 533,) is conclusive upon this question.  As I understand that case the court decided that under just such a contract as this, a towing company was liable for injuries resulting from gross negligence.  The supreme court held that the permit furnished evidence, that the plaintiffs agreed to take all risks upon themselves, and that the defendants in the action were not liable even for gross negligence.  The court of errors reversed the judgment, and I am unable to see how any one can read the opinions delivered without coming to the conclusion, that it was reversed on the ground that the circuit judge erred in not submitting the question of gross negligence to the jury, and in not holding the defendants liable for acts occasioned by gross negligence. There was no intimation in that case that the defendants

Wells and Tucker *against* The Steam Navigation Company.   •

could be made liable only for fraud or a want of good faith I am therefore of the opinion that the contract did not excuse the defendants from liability for damages resulting from gross negligence in the management of the steamboat, and that the circuit court was right in submitting the question to the jury.

GARDINER, J., (after stating the facts;) I think that the circuit court was right in overruling the request of the defendant to charge that the plaintiffs could not recover without showing fraud or want of good faith in the person having charge of the Sandusky. The charge, to say the least, was sufficiently favorable to the defendants. The defendants had agreed for hire to perform a stipulated service for the plaintiffs. The first element in a contract of this character is good faith in its execution; the second such a degree of diligence at least as very careless men exercise in reference to their affairs. It is said that the defendants had a right to contract against liability for the gross negligence of those in charge of the Sandusky. So they had a right to contract against liability for the fraud or bad faith of their agents upon the same principle. It was agreed that the language of the contract was general, and expresses an intent to stipulate against risk from mere negligence, of every kind without exception. But the argument from the generality of the expression, is just as applicable to the fraud of agents, as to their carelessness. According to the doctrine of the defendant's reference, it extends to every risk to which the law will permit a contract to be made. Although the law will not suffer a man to claim immunity by contract against his own fraud, I know of no reason why this may not be done in reference to fraud, or felony committed by those in his employment. Yet the request made to the judge, above mentioned, assumes, and the whole argument has proceeded on the supposition, that fraud upon the part of those having the boat of the plaintiffs in charge, whether principals or servants. would subject the defendants to an action.

All agree, therefore, that the general terms of the contract are subject to some qualification: what this shall be, is the only question. I agree substantially with Senator Bockee, in the opinion given by him in the court of errors in *Alexander* v. *Green*, (7 *Hill*, 544.) That case was in all respects like the present, and should control it. In four of the opinions read on that occasion it was held, that gross negligence was not a risk within the spirit of the contract. In the other, the defendants were held even to the more stringent liability of common carriers. The court by a formal vote refused to declare the defendants liable as common carriers, and the inference is unavoidable that the members were nearly unanimous in declaring that the defendants were liable for gross negligence at least. Such I understand to have been the opinion of this court in awarding a new trial in the case now before us. We held then if a party vested with a temporary control of another's property, for a special purpose of this sort, would shield himself from a responsibility, on account of the gross neglect of himself or his servants, he must show his immunity on the face of his agreement; and that a stipulation so extraordinary, so contrary to general usage and the understanding of men of business, would not be implied from a general expression, to which effect might otherwise be given.

I have heard nothing on this argument to change that opinion, and I think, consequently, that the judgment of the supreme court should be affirmed.

Ruggles, Ch. J., did not hear the argument.

All the other judges concurring,

Judgment affirmed.