By the Court.—Jones, J.
The main question raised in this case is whether the defendant is relieved from responsibility by operation of the stipulation in the bill of lading, that the goods should be at the risk of the owner while on the pier or wharf awaiting shipment.
The plaintiff insists that the company is not thereby discharged.' Because,
*433 1. The stipulation was not brought to plaintiff’s knowledge until after the goods were lost.
2. That the loss occurring through the theft of one of defendant’s employees, is a risk against which the defendant cannot protect itself by any contract or agreement whatever, because any contract or agreement to that, effect would be void.
3. That the loss occurring through the theft of one of defendant’s employees does not fall within the terms and scope of the stipulation.
The first objection is fully met by the case of Meyer v. Harden Express Co., 24 How. Pr. 290, in the reasoning of which case I fully concur.
The second objection is based on a misapprehension of the present state of the law on the subject. As the law now stands, a corporation, though it be a common carrier, may by contract exempt itself from liability for a loss occurring through the fault, negligence, or willful and criminal act of its servants, agents, or officers, other than the directors, and a contract to that effect will not be held void as being contrary to public policy (Perkins v. N. Y. C. R. R., 24 N. Y. 196 ; Wells v. N. Y. C. R. R., Id. 18 ; Dorr v. N. J. Steam navigation Co., 11 Id. 485 ; Bissell v. N. Y. C. R. R., 25 N. Y. 442). What is sufficient to constitute a valid and binding contract of exception is not yet fully settled.
In the above cited cases it is held that the carrying passengers or goods at less than the regular and customary rates, affords a sufficient consideration to uphold the-contract.
But I think the question whether a common carrier can prepare a printed form of contract? containing special clauses as to exemption and liabilities (see 24 N. Y. 201 ; 11 Id. 485), and then refuse to carry except on the terms of that form, unless the shipper can succeed in inducing him to make a special contract, thus compelling the would-be shipper to receive and *434 accept a contract in that form, or else not ship the goods; and whether the shipper, by accepting under such circumstances a bill of lading containing said special clauses, thereby makes these clauses a binding contract on him ; still remain undetermined.
The present case does not call for a solution of the question. A carrier has undoubtedly the right to fix the rates at which he will carry all goods offered for carriage, subject to all the reponsibilities imposed on him by the law, and to adjust those rates according to the various descriptions of goods; and under the principle of the above cited cases, the carrier, if a shipper desires his goods carried at rates less than the usual and customary ones established, may insist that in consideration of such reduction, he shall be exempted from some one or more of his ordinary responsibilities (other than such as arise out of his own fraud, or such negligence of his own as amounts to a wanton and willful disregard of his duty) (21 N. Y. 213), and a contract to this effect will be good.
It seems to me, however, that the option of exempting the carrier from any of his responsibilities should rest not with the carrier but with the shipper, and he ■ should have a reasonable opportunity to exercise it understandingly.
In the case at bar the shipper’s own agent prepared the contract. In the absence of evidence to that effect we cannot assume that the contract was forced on the plaintiff; but must, on the contrary, presume it to have been voluntarily entered into with a full knowledge of all its provisions, and with a sufficient consideration arising out* of the carriage at rates less than the usual and customary ones charged by defendant for a like carriage under all the responsibilities of a common carrier.
This leads to the third objection.
The words used will, when taken in their most com *435 prehensive sense, include the risk of loss through the negligence of, or robbery by, the defendant’s servants.
> But the doctrine now prevails that exemption from liability for loss arising from the negligence, fraud, or felony of employees will not be regarded as included in general words of exception where effect can otherwise be given to these words (Wells v. Steam Navigation Co., 8 N. Y. 375 ; Perkins v. N. Y. C. R. R., 24 Id., cited from p. 206).
This defendant, in the absence of a clause of exemption, would, as a common carrier, have been, liable for any loss of or damage to these goods, except only such as might have been caused by the act of Gtod ór of public enemies.
The general words of the clause in question may well be satisfied even though a loss occurring through the negligence, fraud, or felony of the defendant’s servants, be regarded as not covered by them, for there still remain the risks of loss by theft or robbery committed by persons other than defendant’s servants, the risk of loss by fire, by overflow of water, by steam, without any negligence or fault on the part of the defendants or its servants, for the words of the clause to operate on.
It follows that a loss occasioned by a robbery committed by one of the defendant’s agents is not one of the risks which the plaintiff, by the clause in question, was content to take upon himself.
The loss in question occurred through the theft of one Patrick Stewart.
If at the time of the robbery he was in defendant’s employ, then defendant is liable ; if he was not in its employ, then the plaintiff must bear the loss himself.
The referee has found that he was not in defendant’s employ.
Let us examine the evidence on that point. Thé case was stolen some time between dark Saturday night *436 and eight A. u. the following morning. From twelve p. m. Saturday night to twelve p. m. Sunday night, Stewart was not in the employ of defendant; during the rest of the time he was. There is no evidence whatever that the robbery took place between twelve p. m. Saturnight and twelve p. m. Sunday night. It may be reasoned that the presumption is that it took place then, because it is more reasonable to suppose that a theft took place when but few were stirring around, than when a large number were. I do not know, as matter of common experience, that it would be regarded by thieves either easier or safer to commit a theft on such a place as a covered pier, which is watched over by watchman who can take a position commanding a view of the property at any time of the night, when the » noise and bustle of workmen performing their labor is hushed, and an almost oppressive stillness prevails through which the sound of "footsteps or the grating of a boat against a.pier, or any noise in removing the plunder would be easily heard, and attract the notice o£ the guardians of the property, whose attention would not be apt to be diverted from their duty of guarding by other duties or by other transactions occurring around them, than to cause themselves to be employed as part of a gang of laborers whose duties it is at one period of the night to be on the pier engaged in work at or near the place where the object of plunder is situate, and who are to some extent identified with a right to be about and handling, and then at that period of the night when they are on the pier in the course of the employment, committing, with the aid of confederates in the same gang or outside, a robbery amid the noise and confusion of the work, which would have the tendency to divert the attention of others, to drown whatever noise might be made in the commission of the robbery, and to cover the operations of those concerned in it, or which, if the attempted theft was discovered, *437 would afford a plausible excuse for being found in the position and under circumstances which, without that excuse, might be sufficient to secure a conviction for an attempt to commit a crime.
There seems to me to be nothing in this case which warrants a presumption that the robbery took place during the time the thief was not in defendant’s employ.
The question then arises: on whom devolved the burden of proving the particular time at which the robbery took place. .
If it falls to the lot of plaintiff to prove that it took place at a time when Stewart was in defendant’s employ, then the judgment must be affirmed, for he has not proved it.
. If, on the other hand, it is incumbent on defendant to prove that, it took place at a time when Stewart was not its employ, then the judgment must be reversed, for he has not proved that.
The burden of proof is cast on him who must prove the fact to sustain his action or defense as the case may be.
The plaintiff’s cause of action rests on the nondelivery to him of goods; not for its loss in any particular manner. It is founded on the common-law liability of the common carrier, and not on the stipulation, nor can the'stipulation be regarded as a condition precedent.
"It was inserted in the contract to relieve the defendant from certain of its common law liabilities ; he must therefore show that the non-delivery was the result of a cause which, under the stipulation, relieves him from liability therefor.
It might seem at first blush as if this was requiring defendant to prove a negative. .But, in fact, it only requires proof of two affirmatives, one of which is peculiarly within the knowledge of its officers. The two affirmatives are : 1. The time during which Stewart *438 was in his employ ; 2. The time when the robbery was committed.
The first it has proved; the second it has not proved with sufficient definiteness to relieve it from liability.
The defendant claims, however, that under the. bill of lading a presentation in writing of a claim for the loss at the office of the agent of the steamship at the port of discharge within three days after the steamship shall have finished discharging, was a condition precedent to a recovery by plaintiff; and that such condition precedent was not complied with.
The port of discharge here intended is the port to which the goods, for loss whereof a claim is made, were shipped. That in this case was St. Thomas.
It is a sufficient answer to this claim of defendant that it has no office of any agent at St. Thomas, nor any representative there.
It cannot take advantage of an omission to do that which it has rendered impossible to do' by its own neglect.